IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

CHARLES MENDES,                        )
                                       )
        Appellant/Defendant-Below,     )
                                       )
    v.                                 )       C.A. No.: CPU5-13-000785
                                       )
DESIREE CONRAD,                        )
                                       )
        Appellee/Plaintiff-Below.      )
                                       )

Mr. Charles Mendes                  Victoria J. Hoffman. Esq.
4026 Willow Grove Road              Legal Services Corporation of Delaware, Inc.
Wyoming, DE 19934                   24 A Hiawatha Lane
Self Represented Appellant/         Dover, DE 19904
Defendant-Below                     Attorney for Appellee/ Plaintiff-Below

Trial:      April 14, 2014
Submitted:  May 29, 2014
Decided:    June 2, 2014

## DECISION AFTER TRIAL

The instant civil case involves a dispute between a landlord and tenant. Appellant/Defendant-Below, Charles Mendes, has filed a civil appeal with this Court for a trial *de novo* from a final order of the Justice of the Peace Court. Appellee/Plaintiff-Below, Desiree Conrad, contends that she entered into a residential lease with Mr. Mendes for a mobile home on the grounds that Mr. Mendes would perform certain repairs to the rental property. Ms. Conrad maintains that due to Mr. Mendes' failure to perform the promised repairs, she is entitled to a

refund of her first month's rent and security deposit, totaling $1,550. Mr. Mendes contends that he does not owe Ms. Conrad her first month's rent and that he only owes her $200 of her security deposit. Following trial on this matter, the Court enters judgment for Ms. Conrad in the amount of $1,550 plus post-judgment interest at the legal rate and court costs.

## FACTS

On Thursday, March 14, 2013, Ms. Conrad signed a rental agreement entering into a residential lease of a single-family mobile home owned by Mr. Mendes. The term of the lease began the day the lease was signed; however, Ms. Conrad did not receive keys to the rental unit until the following evening.[1] At the time the lease was signed, Ms. Conrad paid Mr. Mendes $775 for the first month's rent and $775 for the security deposit.

Prior to signing the lease, Mr. Mendes twice acknowledged to Ms. Conrad that he needed to perform several repairs to the rental unit. First, when Ms. Conrad toured the rental unit, Mr. Mendes told her that he needed to fix the floors in the entry way/ living room of the unit and in the hallway leading to the bedrooms. He also told Ms. Conrad that he needed to find a refrigerator for the unit. The day that Ms. Conrad signed the lease agreement, Mr. Mendes again reiterated that he needed to make these repairs to the unit. Specifically, he promised Ms. Conrad that by Sunday, March 17, 2013, the trash in the yard and in the shed would be removed, the broken glass around the windows would be removed, and the floors would be "fixed." Mr. Mendes told Ms. Conrad that he would be finished with the repairs by the end of the weekend.

At the time the lease was signed, Mr. Mendes advised Ms. Conrad that she needed to contact the electric company to transfer the rental unit's account into her name. The electricity

---

[1] On the evening of March 15, 2014, Mr. Mendes sent Ms. Conrad a text message stating that he left one key under the mat and another key on the shelf of a window between the kitchen and the living room. (Pl.'s Ex. 56).

2

was on in the unit when Ms. Conrad met Mr. Mendes to sign the rental agreement; however, at some point after the rental agreement was signed, Mr. Mendes had the electricity turned off. On March 15, 2013, Ms. Conrad contacted the electric company to transfer the account for the unit into her name. She was informed that the electricity would be turned on Monday, March 18, 2013.

On March 16, 2013, Ms. Conrad, with the assistance of her fiancée and a friend, delivered a stove purchased by Ms. Conrad to the rental unit. The new stove was moved into the unit; however, the stove was never installed because it did not have the necessary connecting hose. When the old stove in the unit was disconnected and removed from the wall, Ms. Conrad discovered a rodent trap and feces inside the old stove plus a dead rodent behind the stove. While at the unit, Ms. Conrad also discovered that one of the toilets in the unit had feces in it and did not have any water. Ms. Conrad informed Mr. Mendes via text message of the problem and Mr. Mendes responded by stating "I will take care of it." (Pl.'s Ex. 59). Ms. Conrad also inquired about a gap in the bottom of the front door. (Pl.'s Ex. 52-53). Mr. Mendes responded that the front door would be fixed by the end of the weekend. (Pl.'s Ex. 54). During the evening of March 16, 2013, Mr. Mendes informed Ms. Conrad via text message that he could not make repairs to the floor or properly install the refrigerator until the electricity was turned on in the unit. (Pl.'s Ex. 56-59).

On Monday, March 18, 2013, a day after Mr. Mendes promised the repairs would be completed, the only improvement made by Mr. Mendes was the delivery of a refrigerator. The handles on the refrigerator were removed and the side of the refrigerator was covered in mold. (Pl.'s Ex. 11-12). Ms. Conrad contacted Mr. Mendes via text message regarding the appearance of the refrigerator. She also inquired as to when the trash would be removed from the shed and

3

yard and when the glass would be removed from the windows. (Pl.'s Ex. 61-65). Mr. Mendes responded to Ms. Conrad via text message, stating "[i]f you are unhappy let me know. I will refund and rent to someone else. You [sic] 24 hours to decide." (Pl.'s Ex. 65). Ms. Conrad responded via text message, stating "[a]fter discussing it with my fiancée, he said that if its [sic] not rdy [sic] by Friday [March 22, 2013] we would like to request a refund." (Pl.'s Ex. 70). Mr. Mendes responded "[s]ounds more than fair." *Id.*

On March 22, 2013, the second date Mr. Mendes agreed to have the repairs completed, the condition of the rental unit remained unchanged.[2] At this time, Ms. Conrad took photographs documenting the condition of the rental unit. (Pl.'s Ex. 4-44). While at the unit, Ms. Conrad observed and documented that the stove she had moved into the unit had been moved out of the unit and left in the front yard. (Pl.'s Ex. 44). Ms. Conrad returned the keys to the unit, leaving them in the spot where Mr. Mendes originally placed them, and removed her name from the unit with the electric company. Also at this time, Ms. Conrad contacted Mr. Mendes via text message and informed him that she had found another unit that was in move-in condition and wished to have her money refunded as promised. (Pl.'s Ex. 70-71). Mr. Mendes advised Ms. Conrad to send him a copy of the lease and a signed, dated and notarized letter detailing her reason for terminating the lease via certified mail.

On Sunday, March 24, 2013, Ms. Conrad returned to the unit with her fiancée to pick up her stove from the front yard. When she arrived, Mr. Mendes was inside the unit making repairs. The electricity for the unit was being supplied by a generator. Ms. Conrad's stove was no longer on the front lawn. When asked about the stove, Mr. Mendes informed Ms. Conrad that he did

---

[2] On March 22, 2013, the condition of the unit was as follows: there was trash in the yard and in the shed; a gap in the front door; holes in the walls; soft spots in the floors of the hallway, bedroom, and bathroom; a hole in the floor by the back door; broken glass along the window sills; a broken and unsanitary toilet; and a hole in the bedroom floor. (Pl.'s Ex. 41-44).

not know what happened to it. At this time, Ms. Conrad attempted to hand-deliver her letter of termination to Mr. Mendes; however, Mr. Mendes refused to accept the letter. Ms. Conrad also sent a letter to the address provided to her by Mr. Mendes via certified mail on this date.

On April 10, 2013, Mr. Mendes sent Ms. Conrad a letter regarding the return of her security deposit. (Def's Ex. 2). In the letter he stated that he agreed to terminate Ms. Conrad's lease on March 24, 2013. He also stated that Ms. Conrad never returned the keys to the rental unit. The letter included a list of expenses deducted from the amount of the security deposit, including: $100 to replace the locks on the doors, $250 to reinstall the old stove and dispense of the stove moved into the location by Ms. Conrad, $150 to replace the hardwood floor damaged when Ms. Conrad moved her stove into the unit, $50 to repair carpet damaged in the center bedroom, and $25 to clean trash left in the north bathroom. Mr. Mendes attempted to return the remainder of the security deposit, totaling $200, to Ms. Conrad via certified mail sent to the forwarding address she provided. (Def's Ex. 2) (Pl.'s Ex. 75-76, 80-81). The certified letter was returned on April 13, 2013 as "vacant unable to forward." (Def's Ex. 2).

Ms. Conrad contends that she has a right to the total return of her security deposit and first month's rent because Mr. Mendes failed to provide her with a rental unit that met the requisite conditions set forth in the Kent County Code by the promised date. As a result, Ms. Conrad argues that she had a right to terminate her lease agreement with Mr. Mendes and receive the monies paid to him. Mr. Mendes contends that Ms. Conrad was given full possession of the rental unit on March 14, 2013, the day she signed the rental agreement. He argues that Ms. Conrad moved into the unit because she put her stove in the unit. He further argues that pursuant to title 25, section 5307 of the Delaware Code, upon notice of a problem in the unit by the tenant, a landlord has ten days to initiate repairs and thirty days to complete repairs. Finally, Mr.

Mendes contends that Ms. Conrad is only entitled to $200 of her $775 security deposit because of the damage she caused to the unit.

## DISCUSSION

Title 25, section 5302 of the Delaware Code sets forth remedies available to a tenant. Section 5302(a) states:

> [i]f the landlord fails to substantially conform to the rental agreement, or if there is a material noncompliance with any code, statute, ordinance or regulation governing the maintenance or operation of the premises, the tenant may, on written notice to the landlord, terminate the rental agreement and vacate the premises at any time during the first month of occupancy, so long as the tenant remains in possession in reliance on a promise, whether written or oral, by the landlord to correct all or any part of the condition or conditions which would justify termination by the tenant under this section.

DEL. CODE ANN. tit. 25, § 5302(a). Pursuant to the Restatement (Second) of Property, the rationale behind this rule "departs from the old common law doctrine of *caveat emptor* by which the tenant, having signed a lease, took the property as he found it, absent any agreement to the contrary." RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 5.1 cmt. b (2014). "That the tenant knows of the unsuitable condition of the leased property on the date the lease is made does not in and of itself prevent the rule of this section from applying. The tenant normally is justified in assuming that the unsuitable condition will be eliminated before the date he is entitled to possession." *Id.* § 5.1 cmt. c. "The leased property on the date the lease is made is unsuitable for residential purposes if it would be unsafe or unhealthy for the tenant to enter on the leased property and use it as a residence." *Id.* § 5.1 cmt. e. However, a unit may be unsuitable for residential purposes even if it is not unsafe or unhealthy. *Id.* A tenant cannot waive violations of the housing code. *Id.* § 5.3 cmt. c.

In this case, Ms. Conrad must prove to the Court that: (1) she terminated the rental agreement in writing during the first month of the lease term; (2) that she remained in possession

of the premises in reliance on Mr. Mendes' *written or oral* promises to repair the parts of the unit that justify termination; and (3) Mr. Mendes either failed to substantially conform to the rental agreement or rented her a unit that was in material noncompliance with a statute, code, ordinance or regulation.

First, the Court concludes that Ms. Conrad terminated the tenancy within the first month of her lease term via written notice to Mr. Mendes. The term of the lease commenced on March 14, 2013. On March 22, 2013, Ms. Conrad sent Mr. Mendes a letter of termination via certified mail to the address he provided and also attempted to personally serve him with a copy of the letter. Both parties agree that the rental agreement was terminated by March 24, 2013.[3] While the Court does not find that Ms. Conrad ever "occupied" the unit, it does conclude that she terminated the lease during the requisite statutory time.

Second, Ms. Conrad signed the rental agreement in reliance on Mr. Mendes' acknowledgement that repairs needed to be made to the unit and that Mr. Mendes would perform the repairs in a short period of time. Mr. Mendes knew that Ms. Conrad was waiting to move into the rental unit until he finished the repairs because she felt it was an unsafe environment for her family. Based on the promises made to her by Mr. Mendes, it would not take long for him to complete the repairs. Mr. Mendes twice agreed and twice failed to make the acknowledged repairs in the promised time. Therefore, the Court concludes that Ms. Conrad signed the lease in reliance that the repairs would be made.

Finally, the Court finds that Mr. Mendes failed to provide Ms. Conrad with a rental unit that complied with both the terms of the rental agreement and with the Delaware State Housing Code. The Delaware State Housing Code ("Housing Code") is set forth in Chapter 41 of Title 31

---

[3] In his letter discussing the return of the security deposit, Mr. Mendes stated that he considered the lease terminated on March 24, 2012. (Def's Ex. 2).

of the Delaware Code.[4] The Housing Code provides the "minimum conditions of residential premises and buildings to be used for human occupancy." DEL. CODE ANN. tit. 31, § 4111. Pursuant to the Housing Code, "[a]ll premises[5] shall be maintained in a clean, safe and sanitary condition free from any accumulation of rubbish[6] or garbage."[7] DEL. CODE ANN. tit. 31, § 4112. The exterior and interior structure, including all interior equipment, "shall be maintained structurally sound and sanitary so as not to pose a threat to the health and safety of the occupants and so as to protect the occupants from the environment." DEL. CODE ANN. tit. 31, §§ 4113(a), 4114(a). "The supporting structural members of every building shall be maintained structurally sound, not showing any evidence of deterioration which would render them incapable of carrying the imposed loads." DEL. CODE ANN. tit. 31, § 4114(b). "Every exterior door . . . shall be maintained in good condition." DEL. CODE ANN. tit. 31, § 4113(o). "All structures shall be kept free from insect and rat infestation . . . ." DEL. CODE ANN. tit. 31, § 4114(i). "Every dwelling unit shall include its own plumbing facilities which are in proper operating condition, can be used in privacy and are adequate for personal cleanliness and the disposal of human waste." DEL. CODE ANN. tit. 31, § 4116(a). "All cooking and heating equipment, components and accessories in every heating, cooking and water heating device shall be . . . kept functioning

---

[4] Chapter 143 of the Kent County Code substantially mirrors the Delaware State Housing Code.

[5] Premises are defined as any "lot, plot or parcel of land, including the building or structures thereon." DEL.CODE ANN. tit. 31 § 4106(33).

[6] Rubbish is defined as "[c]ombustible and noncombustible waste materials, except garbage, and the term shall include the residue from the burning of wood, coal, coke and other combustible materials, paper, rags, cartons, boxes, wood, excelsior, rubber, leather, tree branches, yard trimmings, tin cans, metals, mineral matter, glass, crockery and dust and other similar materials." DEL. CODE ANN. tit. 31, § 4106(39).

[7] Garbage is defined as "[t]he animal and vegetable waste resulting from the handling, preparation, cooking and consumption of food." DEL. CODE ANN. tit. 31, § 4106(15).

properly so as to be free from fire, health and accident hazards." DEL. CODE ANN. tit. 31, § 4117(d).

The rental agreement signed by the parties states that the condition of the premises and all fixtures and attached property provided by Mr. Mendes are "clean, and in good satisfactory condition." The Court concludes that Mr. Mendes failed to comply with this portion of the rental agreement due to the extent of the disrepair of the rental unit. Additionally, while not all of the necessary repairs amount to Housing Code violations, when considered individually, several aspects of the unit fail to meet the standards set forth in the Housing Code. Specifically, the Court finds that the unit was not maintained in a clean, safe and sanitary condition. There was garbage and rubbish in the yard and shed, broken glass along the window sills, feces in one of the toilets and a dead rodent behind the stove. The plumbing in one of the bathrooms was inoperable. The structure of the unit was unsound, resulting in soft spots and holes in the floor and walls of several areas in the unit. The front door to the unit had a large gap and did not fit securely within the door frame. The equipment in the interior of the unit was not maintained in a sanitary condition. The refrigerator in the unit was covered with mold and there was animal feces and a trap found in the stove. As a result of these items, the Court concludes that Mr. Mendes failed to provide Ms. Conrad with a rental unit that complied with the rental agreement and the Housing Code.

Mr. Mendes contends that Ms. Conrad acquiesced to the condition of the rental unit when she signed the rental agreement.[8] However, pursuant to the Restatement (Second) of Property,

---

[8] The rental agreement states:

RESIDENT acknowledges that he has examined the premises and that said premises, all furnishings, fixture, plumbing, heating, electrical facilities, all items listed on the attached property condition checklist, if any, and/or all other items provided by OWNER are all clean, and in good satisfactory condition except as may be indicated elsewhere in this Agreement. (Pl.'s Ex. 1).

the doctrine of *caveat emptor* does not apply in the context of landlord tenant law. Furthermore, Ms. Conrad cannot waive Mr. Mendes' obligation to provide her with a rental unit in compliance with the Housing Code. At trial, Mr. Mendes testified as to his familiarity with the Housing Code. He stated that he knew the Housing Code required everything in the rental unit to be in a state of good repair. He agreed that there were issues in the unit that violated the Housing Code and that needed to be repaired. However, Mr. Mendes argues that because Ms. Conrad did not report these issues to him until *after* she signed the lease, he had ten days to start and thirty days to finish the repairs, pursuant to title 25, section 5307 of the Delaware Code. The Court disagrees with Mr. Mendes' analysis. Section 5307 is not applicable to the facts of this case because Mr. Mendes did not put Ms. Conrad into full possession of the rental unit at the start of the lease term. Pursuant to the title 25, section 5303 of the Delaware Code, a "landlord shall supply the rental unit bargained for at the beginning of the term and shall put the tenant into *full possession*." DEL. CODE ANN. tit. 25, § 5303 (emphasis added). "'Full possession' may obviously be satisfied in some cases without actual occupancy- for example, where there is a right to occupancy and the landlord has satisfied any material covenants relating to the condition of the premises." *Clothier v. McCloskey*, 1986 WL 15715, at *8 (Del. Ch. July 10, 1986). However, where "the landlord agrees to significant renovations to the leased premises and the parties agree to postpone actual occupancy until such renovations are completed, failure to complete the renovations precludes a determination that the lessee has been put in 'full possession.'" *Id.*

For the reasons discussed above, the Court concludes that Mr. Mendes failed to supply Ms. Conrad with "full possession" of the rental unit at the start of the lease term as she failed to occupy the unit because it did not conform to the rental agreement nor did it comply with the

standards set forth in the Housing Code. A provision of the lease signed by the parties states the following:

> If OWNER is unable to deliver possession of the residence to RESIDENTS on the agreed date, because of the loss or destruction of the residence or because of the failure of the prior residents to vacate or *for any other reason*, the RESIDENT and/or OWNER may immediately cancel and terminate this agreement upon written notice to the other party at their last known address, whereupon neither party shall have liability to the other, and *any sums paid under this Agreement shall be refunded in full.*

(Pl.'s Ex. 1) (emphasis added). As a result, the Court concludes that Mr. Mendes must refund Ms. Conrad the full amount of her first month's rent and security deposit.[9]

## CONCLUSION

As a result of the Court's finding of fact, which is based upon the entire record, including all direct and circumstantial evidence, and all references resulting therefrom, and the Court's above-referenced conclusions of law, the Court enters judgment for the Appellee/Plaintiff-Below, Ms. Conrad, and against the Appellant/Defendant-Below, Mr. Mendes, in the amount of $1,550, plus court costs and post judgment interest at the legal rate of 5.75% per annum.

**IT IS SO ORDERED this 2<u>nd</u> day of JUNE, 2014.**

_____
CHARLES W. WELCH
JUDGE

---

[9] Title 25, section 5514, governing the return of security deposits, is inapplicable to the facts of this case because the Court concludes that Ms. Conrad was never put into full possession of the unit. The purpose of a security deposit as set forth by the Delaware Code, is to reimburse the landlord for damage to the unit which exceeds normal wear and tear, rental arrearage, or expenses related to renovating and rerenting the unit. DEL. CODE ANN. tit. 25, § 5514(c). Assuming *arguendo* that Ms. Conrad did fully possess the rental unit, the Court would *still* conclude that Mr. Mendes was obligated to return to her the full amount of the security deposit. The itemized list of damages provided by Mr. Mendes covers damages to the property that pre-existed Ms. Conrad's tenancy. Therefore, even if § 5514 were applied here, Mr. Mendes' deductions were unreasonable.

11